DOA
03/08/23

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America | Case No.: 23-9152 MJ |
|---|---|
| v. | **CRIMINAL COMPLAINT** |
| Juan Alfonso Torres Rodriguez | |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

On or about the date of March 8, 2023, in the County of Maricopa, in the District of Arizona, the defendant, Juan Alfonso Torres Rodriguez, violated Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi), an offense described as follows:

Possession with the intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance.

I further state that I am a Special Agent with the United States Drug Enforcement Administration and that this complaint is based on the following facts:

**See Attached Statement of Probable Cause Incorporated By Reference Herein.**

Continued on the attached sheet and made a part hereof:  ☒Yes   ☐ No

AUTHORIZED BY: AUSA William Bryan    WILLIAM BRYAN
Digitally signed by WILLIAM BRYAN
Date: 2023.03.09 09:11:05 -07'00'

---

Jessica Earle, Special Agent, DEA
Name of Complainant

JESSICA EARLE
Digitally signed by JESSICA EARLE
Date: 2023.03.09 09:22:13 -07'00'
Signature of Complainant

Sworn to telephonically and subscribed electronically
3/9/2023 @ 10:38am
Date

at Phoenix, Arizona
City and State

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge
Name & Title of Judicial Officer

*ESWillett*
Signature of Judicial Officer

## STATEMENT OF PROBABLE CAUSE

I, Jessica Earle, Special Agent of the United States Drug Enforcement Administration ("DEA"), being duly sworn, declare and state as follows:

## INTRODUCTION AND BACKGROUND OF AFFIANT

1. Your Affiant, Jessica M. Earle, is a criminal investigator of the United States within the meaning of Title 18, United States Code Section 2510(7) – an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code Section 2516.

2. Your Affiant has been a Special Agent with DEA since June 2019 and is currently assigned to the DEA Phoenix Field Division (PFD) DEALERS Group 16. Prior to becoming a Special Agent, your Affiant attended the DEA's sixteen-week training academy located in Quantico, Virginia. While at the DEA training academy, your Affiant received formal training in investigative techniques, drug identification, and laws pertaining to drug investigations. Your Affiant has also received on-the-job training from senior agents regarding the manner in which drugs are trafficked and best practices for law enforcement to counter the drug trafficking threat.

3. Prior to your Affiant's employment with the DEA as a Special Agent, your Affiant was employed by the DEA as an Intelligence Analyst for twelve years, beginning in 2006. For the first five years, your Affiant served as the senior strategic analyst covering Mexican Drug Trafficking Organizations (DTO) at DEA Headquarters. From 2011 to 2014, your Affiant served as a strategic intelligence analyst stationed at DEA's Mexico City Country Office in Mexico City, Mexico. Then, from 2014 to 2019, your Affiant served as the senior strategic analyst covering DEA's Far East region, including China, as well as the Acting Unit Chief for DEA's Global Strategic Intelligence Unit at DEA Headquarters.

4. In the course of conducting drug investigations, your Affiant has personally interviewed informants and persons involved in the distribution of illegal drugs. In addition, your Affiant has provided surveillance in support of federal investigations that utilized court-authorized interceptions of wire and electronic communications. Your Affiant has also consulted with other experienced investigators concerning the practices of

drug trafficking organizations and the strategies used to investigate them.

5.     Your Affiant is familiar with the methods used in drug-trafficking operations and the drug-trafficking patterns employed by DTOs.  During your Affiant's tenure with the DEA, your Affiant has become knowledgeable of the methods and the language typically used by DTOs.  Your Affiant knows that drug-traffickers often require the use of one or more communication facilities to coordinate times, places, and procedures for importing, concealing, and distributing controlled substances, and for arranging the disposition of drug-trafficking proceeds.  Your Affiant knows that the use of telephones is essential in maintaining communication with sources of supply, brokers, customers, financiers, transporters, dealers, money couriers, and stash house operators

6.     In preparing this affidavit, your Affiant has conferred with other Special Agents and other law enforcement officers, who share the opinions and conclusions stated herein.  Furthermore, your Affiant has personal knowledge of the following facts or has learned them from the individual(s) mentioned herein.

## **PROBABLE CAUSE**

7.     On March 8, 2023, Special Agents with the DEA established surveillance in the vicinity of East Pima Street in Phoenix, Arizona in anticipation of a suspected drug transaction. The drug deal was coordinated, in part, by a DEA Confidential Source ("CS"). The CS that provided this information to law enforcement is believed to be credible and reliable.  The CS is working to obtain immigration benefits.  To date, the CS has been involved in approximately five different operations, which have led to the seizure of distribution quantities of methamphetamine, fentanyl powder, M/30 fentanyl pills, and proceeds believed to be generated through the sale of controlled substances.  The CS has numerous contacts throughout Arizona and Mexico who provide the CS with drug-related information.  The CS shares this information with the DEA.

8.     In the evening of March 8, 2023, while conducting surveillance, law enforcement observed the CS meet with a Hispanic male, later identified as Juan Alfonso Torres-Rodriguez (hereafter, "TORRES"), in the vicinity of East Pima Street in Phoenix, Arizona to purchase approximately 10,000 fentanyl pills. Surveillance units observed

TORRES lean into the CS' vehicle. At this time, the CS exchanged $3,000 in official advanced funds to TORRES. In exchange, the CS received a black trash bag containing a clear, ziplock bag containing counterfeit "M30" pills suspected to contain fentanyl. The total gross weight of the black trash bag and its contents was approximately 1.165 kilograms. Law enforcement officers removed a sample of the suspected fentanyl from the ziplock bag and conducted a field test. The field test indicated a presumptive positive for the presence of fentanyl.

9. Following the meeting between the CS and TORRES, law enforcement officers observed TORRES return to a residence along East Pima Street in Phoenix, Arizona. After the CS departed the area, the CS contacted TORRES by telephone in the presence of investigators and attempted to order additional fentanyl pills. TORRES stated that if individuals in Mexico (the suspected suppliers of the suspected fentanyl pills) approved the sale, TORRES would provide additional fentanyl to the CS that night. In the presence of investigators, the CS contacted individuals in Mexico by telephone for approval to obtain additional fentanyl. The individuals in Mexico granted the CS' request.

10. TORRES then instructed the CS by telephone to go to a residence located along South 22nd Avenue in Phoenix, Arizona to take possession of the additional fentanyl. The CS agreed to meet at a business located near the residence indicated by TORRES. TORRES stated that he (TORRES) would be driving a black car. Shortly thereafter, surveillance officers observed a black Chevrolet Camaro park next to the CS at the agreed upon business. Based on surveillance and communications between the CS and TORRES, investigators approached the Camaro with activated lights and sirens and wearing law enforcement apparel. Law enforcement officers thereafter detained TORRES, the driver of the black Chevrolet Camaro. Initially, TORRES attempted to evade law enforcement by reversing the Camaro after lifting his hands in the air in response to police lights and sirens. However, investigators were able to stop and detain TORRES without further incident.

11. During a search of the black Chevrolet Camaro, law enforcement officers discovered a ziplock bag containing counterfeit "M30" pills suspected to contain fentanyl on the driver's side of the Camaro. The total gross weight of the ziplock bag was

approximately 1.169 kilograms. Law enforcement officers removed a sample of the suspected fentanyl from the ziplock bag and conducted a field test. The field test indicated a presumptive positive for the presence of fentanyl.

12. Law enforcement officers later administered TORRES his *Miranda* rights, which TORRES acknowledged and waived, and TORRES agreed to answer questions without the presence of an attorney. TORRES stated that he (TORRES) was involved in a drug transaction earlier that evening in the vicinity of the East Pima Street residence and that he (TORRES) was attempting to conduct another drug transaction with the same buyer at the agreed upon business.

13. Law enforcement officers later conducted a consensual search of TORRES' residence, a silver Volkswagen Jetta parked near TORRES' residence, and two cellular telephones. Within TORRES' residence, investigators discovered an additional 108.095 kilograms of counterfeit "M30" pills believed to contain fentanyl distributed between seven, five-gallon containers and 30 plastic-wrapped bundles. The suspected fentanyl pills were located in the laundry room of TORRES' residence and within the Volkswagon Jetta. Law enforcement officers removed a sample of the suspected fentanyl from the five-gallon containers and conducted a field test. The field test indicated a presumptive positive for the presence of fentanyl. Additionally, investigators seized a yet undetermined amount of United States currency from the residence, including the $3,000.00 in official advanced funds used to purchase the initial 10,000 suspected fentanyl pills, discovered in TORRES' wallet.

14. Law enforcement officers conducted a consensual review of TORRES' cellular telephones. The information contained within the cellular telephones corroborated the events as witnessed by law enforcement during surveillance.

15. Based on the facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that TORRES did knowingly and intentionally possess with the intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vi).



JESSICA EARLE  Digitally signed by JESSICA EARLE
Date: 2023.03.09 09:23:44 -07'00'

Jessica Earle
Special Agent
U.S. Drug Enforcement Administration

Subscribed electronically and sworn to telephonically on this 9th day of March, 2023.

*EsWillett*

HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE

5